```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

--------------------------------x
TAMMIE T. FRANCIS,              :
                                :
          Plaintiff,            :
                                :
v.                              :      Civil No. 3:10cv1474 (AWT)
                                :
UNITED STATES OF AMERICA and    :
JAY MANVI,                      :
                                :
          Defendants.           :
--------------------------------x

## RULING ON MOTION TO DISMISS

The plaintiff, Tammie T. Francis ("Francis"), who is serving a life term of imprisonment at FCI Danbury in Danbury, Connecticut, commenced this action pro se against the defendants, United States of America and Jay Manvi ("Manvi"). The plaintiff brings a claim pursuant to 42 U.S.C. § 1983 for failure to provide her with adequate medical care in violation of the Eighth Amendment, and a claim pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346, ("FTCA") for negligence in the provision of medical care and by virtue of a failure to equip bunk beds in the cells with ladders. The defendants have moved to dismiss the plaintiff's § 1983 and negligence by virtue of failure to equip bunk beds in the cells with ladders claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, respectively. The claim for negligence in the provision of medical care is not mentioned in the motion. For the reasons set forth below, the motion is being granted.

## I. FACTUAL BACKGROUND

On or about May 16, 2009, the plaintiff fell and injured her ankle as she descended from the top bunk in her prison cell. The plaintiff claims that she fell because, at the time of her injury, the bunk bed was not equipped with a ladder. After she fell, the plaintiff promptly sought medical attention.

At health services, the plaintiff was examined by defendant Manvi, a physician assistant. Manvi diagnosed the plaintiff's injury as a sprained left ankle and instructed her to take ibuprofen. The plaintiff requested an x-ray of her ankle and a pass to sleep in the bottom-bunk so that she would not need to climb to and from the top-bunk in her cell. Both requests were denied. The plaintiff returned to health services on May 21, 2009 because her ankle remained swollen and she was in constant pain. She again requested an x-ray and bottom-bunk pass, and that time, both requests were granted and her x-ray was scheduled for June 18, 2009. During the course of the next several weeks, the plaintiff complained daily of the pain and swelling in her ankle. The plaintiff received an x-ray on June 18, 2009 and was seen by an orthopedist on June 25, 2009. The doctor diagnosed the plaintiff's injury as a subacute healing non-displaced fracture of the fibula with callus formation on the ankle.

The plaintiff believed that her injury was caused by the prison's failure to equip bunk beds with ladders. Furthermore,

2

the plaintiff believed that her recovery from the injury was delayed because she received improper medical treatment from Manvi when she was initially diagnosed with a sprained ankle. The plaintiff filed an informal complaint with her Correctional Counselor on June 25, 2009, stating that she had received inadequate medical care. Because the complaint was not resolved informally, the plaintiff filed a formal written Administrative Remedy Request to the Warden on July 18, 2009, the day after she received copies of the medical records pertaining to her injury. The Warden rejected the plaintiff's request on July 21, 2009, determining that the plaintiff's application was untimely because it did not comply with the Bureau of Prisons ("BOP") Administrative Remedy Program's requirement that requests be filed within 20 days of the event complained about.

After receiving the Warden's response, the plaintiff submitted an appeal to the Northeast Regional Director of the Bureau of Prisons on July 23, 2009. The plaintiff stated that she had waited until July 18, 2009 to submit her Administrative Remedy Request because she did not receive her medical records until July 17, 2009. Because she waited for the medical records, the plaintiff did not believe that her request was untimely. The Northeast Regional Director denied the plaintiff's appeal on July 29, 2009, concurring with the determination by the Warden that the original application was untimely.

3

The plaintiff appealed to the General Counsel's Office at the Central Office of Appeals on August 2, 2009. The plaintiff did not include in her appeal an explanation of why she did not submit her Administrative Remedy Request until July 18, 2009. The appeal was again rejected because the original application was untimely.

The plaintiff subsequently filed an Administrative Tort Claim under the FTCA on September 16, 2009. The Northeast Regional Office of the Federal Bureau of Prisons declined to offer the plaintiff a settlement and denied her claim.

## II. LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(1) or 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 550, 555 (2007), citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 1974. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dept. Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999), quoting Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## III. DISCUSSION

The plaintiff brings claims under 42 U.S.C. § 1983 and the FTCA. Pursuant to § 1983 she claims that she was provided with constitutionally inadequate medical care in violation of the Eighth Amendment. Pursuant to the FTCA, she claims that Manvi was negligent in providing her with medical care and the BOP was negligent by failing to equip bunk beds in the cells with ladders.

### A. Provision of Inadequate Medical Care in Violation of the 42 U.S.C. § 1983 and the Eighth Amendment

The Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The administrative remedy process provided to federal inmates by the BOP consists of four steps. First, "an inmate shall . . . present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R.

6

§ 542.13(a). Second, if the inmate is dissatisfied with the informal resolution of her complaint, the inmate must submit a formal written Administrative Remedy Request on a BP-9 form to the Warden within 20 days of the date of the occurrence of the event that is the basis for the remedy request. See 28 C.F.R. § 542.14(a). "Where an inmate demonstrates a valid reason for delay, an extension in filing time may be allowed." 28 C.F.R. § 542.14(b). Third, an inmate who is dissatisfied with the Warden's response may submit an appeal on a BP-10 form to the Regional Director within 20 days of the Warden's signed response. See 28 C.F.R. § 542.15(a). Fourth, an inmate who is dissatisfied with the Regional Director's response may submit a final appeal on a BP-11 form to the General Counsel's Office at the Central Office of Appeals within 30 days of the Regional Director's signed response. See 28 C.F.R. § 542.15(a). "When the inmate demonstrates a valid reason for delay, [the appeal] time limits may be extended." 28 C.F.R. § 542.15(a).

"Filing an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). Failure to timely exhaust administrative remedies results in procedural default, which precludes judicial review of the defaulted claim unless the inmate is able to justify the failure to exhaust. See Carmona v. U.S. Bureau of Prisons, 243

F.3d 629, 634 (2d Cir. 2001).

"The Second Circuit has established a three-part inquiry for when 'a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust administrative remedies.'" Petrucelli v. Hasty, 605 F. Supp. 2d 410, 422 (E.D.N.Y. 2009), quoting Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).

> Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact available to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.

Hemphill, 380 F.3d at 686. In determining whether the prisoner's failure to comply is justified and may be excused, courts will look to whether "legitimate circumstances beyond the prisoner's control preclude[d] him from fully pursuing his administrative remedies." Carmona, 243 F.3d at 634; see also Murray v. Carrier, 477 U.S. 478, 488 (1986) ("[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded

8

. . . efforts to comply with the . . . procedural rule.").

In the present case, the plaintiff failed to exhaust her administrative remedies because she filed an untimely Administrative Remedy Request. "A section 1983 claim accrues when the plaintiff knows of or has reason to know of the harm." <u>Eagleston v. Guido</u>, 41 F.3d 865, 871 (2d Cir. 1994). The plaintiff became aware of "the harm" on June 25, 2009 when she learned that the diagnosis after the x-ray was different than the original diagnosis of a sprained ankle. Accordingly, she had 20 days from June 25, 2009 to file her Administrative Remedy Request. The plaintiff did not request an extension of the time limit and submitted the Administrative Remedy Request on July 18, 2009, after the 20 day period had passed. Therefore the Warden concluded that her request was untimely.

The plaintiff states that she submitted her request late because she was waiting to receive the medical records pertaining to her ankle injury. While receiving the records in time to submit a timely request may have been beyond the plaintiff's control, the plaintiff has made no showing that she was unable to request an extension of the 20 day time limit pursuant to 28 C.F.R. § 542.14(b). Because the plaintiff did not comply with the requirements for timely filing an Administrative Remedy Request, she has not exhausted her administrative remedies. Additionally, the plaintiff has not alleged circumstances beyond

9

her control sufficient for the court excuse her failure to exhaust. Therefore, the court does not have subject matter jurisdiction over the plaintiff's § 1983 claim and the defendants' motion to dismiss that claim is being granted.

Moreover, even if the plaintiff had exhausted her administrative remedies, her claim that the medical care she received was constitutionally inadequate fails on the merits. In order to establish an Eighth Amendment violation, a plaintiff must show that the defendants were deliberately indifferent to her serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976).

> The deliberate indifference standard embodies both an objective and a subjective prong. Objectively, the alleged deprivation must be "sufficiently serious," in the sense that "a condition of urgency, one that may produce death, degeneration, or extreme pain" exists. Subjectively, the charged official must act with a sufficiently culpable state of mind.

Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). "Mere negligence will not support a section 1983 claim; the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." Pimentel v. Deboo, 411 F. Supp. 2d 118, 128 (D. Conn. 2006) (internal quotation marks and citations omitted).

Assuming arguendo that the plaintiff's injury was "sufficiently serious," the plaintiff makes only conclusory allegations that Manvi was deliberately indifferent to her

serious medical needs.  The plaintiff does not allege facts that could establish that Manvi acted with a sufficiently culpable state of mind.  She only alleges that Manvi diagnosed her injury as a sprained ankle and would not give her an x-ray, and that she later received a diagnosis which was different than that made by Manvi.  While these allegations may support a claim that Manvi negligently provided medical care, they do not support a claim that Manvi acted with deliberate indifference.  Therefore, even if the plaintiff had exhausted her administrative remedies, her claim that defendant Manvi violated her rights under the Eighth Amendment fails on the merits.

    **B.    Negligence Claim for Failure to Equip Bunk Beds with Ladders**

The FTCA is a limited waiver of sovereign immunity by the federal government.  The discretionary function exception of the FTCA is "a form of retained sovereign immunity.  As a result, the [FTCA's] waiver of federal sovereign immunity does not encompass actions based upon the performance of, or failure to perform, discretionary functions."  In re World Trade Ctr. Disaster Site Litig., 521 F.3d 169, 190 (2d Cir. 2008).  The Supreme Court has applied a two-step test to determine whether an act is discretionary and falls within the waiver of sovereign immunity exception under the FTCA.  See Berkovitz v. United States, 486 U.S. 531, 536-37 (1998).  First, a discretionary act must be involved such that there is "an element of judgment or choice."

11

United States v. Gaubert, 499 U.S. 315, 322 (1991).
Discretionary acts include "day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest." Fazi v. United States, 935 F.2d 535, 538 (2d Cir. 1991). "The court only needs to consider the second step if the action was discretionary under the first step." Bultema v. United States, 359 F.3d 379, 383 (6th Cir. 2004).

Second, "even assuming the challenged conduct involves an element of judgment, it remains to be decided whether that judgment is of the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322. "Because the purpose of this exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy . . . , the exception protects only governmental actions and decisions based on considerations of public policy." Id. at 323. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Id. at 324.

The BOP is charged with, inter alia, "provid[ing] for the safekeeping, care, . . . subsistence . . . protection, instruction, and discipline" of prisoners. 18 U.S.C. §§

4042(a)(2) and (3).

> While it is true that the statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates.

Scrima v. Hasty, No. 97 Civ. 8433, 1998 U.S. Dist. LEXIS 15050, at *7-8 (S.D.N.Y. Sept. 24, 1998), quoting Calderon v. United States, 123 F.3d 947, 950 (7th Cir. 1997). Thus, deciding what steps should be taken to provide for prisoners' safety involves judgment and discretion. "[T]here are no BOP rules, regulations, or policies governing the use of ladders or bunks . . . these decisions are made independently by the administrators of each institution. [T]he decision [as to whether to provide ladders] clearly involve[s] 'an element of judgment or choice.'" Lee v. United States, No. 5:10cv16, 2010 U.S. Dist. LEXIS 105921, at *10-11 (N.D. W. Va. Oct. 4, 2010). Because the decision as to whether to provide ladders on bunk beds is a matter of safety, involves discretion and is not specifically provided for by statute, the first prong of the discretionary function exception is satisfied.

The decision as to whether to provide ladders on bunk beds in prison cells is also subject to a policy analysis. Providing ladders presents "valid safety and security concerns relating to the beds at issue. Guard rails, and sometimes ladders, are not included because of the danger that they can be broken off and

13

used as weapons or escape devices." Bultema, 359 F.3d at 384. "The decision generally not to have bed rails . . . involve[s] the type of across-the-board policy-making judgment that the discretionary function exception was meant to leave to federal administrators, in this case prison administrators." Id.; see also Preston v. United States, No. 1:08cv2493, 2010 U.S. Dist. LEXIS 75386, at *12 (N.D. Ga. July 27, 2010) ("[The] decision not to add ladders to the bunk beds . . . was grounded in prison and inmate safety, which is precisely the type of policy decision that is protected by the discretionary function exception.") (internal citation and quotation marks omitted). Because the decision is subject to a policy analysis, the second prong of the discretionary function exception is also satisfied.

Other courts that have considered this issue have also held that the decision not to provide ladders on bunk beds in prison cells falls within the discretionary function exception. See, e.g., Fernandez v. Fed. Bureau of Prisons, No. 99 Civ. 4944, 2001 U.S. Dist. LEXIS 11730, at *2 (S.D.N.Y. Aug. 13, 2001) ("[W]hether to provide ladders for bunk beds . . . involve[s] the exercise of discretion . . . [and] the Government enjoys sovereign immunity for these types of discretionary functions under the FTCA."); Preston, 2010 U.S. Dist. LEXIS 75386, at *12 ("Warden Zenk's failure to provide a ladder for Preston's use in obtaining access to his upper bunk is protected by the FTCA's

discretionary function exception."); Lee, 2010 U.S. Dist. LEXIS 105921, at *12 ("This Court finds that the discretionary function exception applies and that valid safety and security reasons exist for the BOP's decision to refuse to install ladders on the bunk beds."); Jackson v. United States, No. 06-88, 2007 U.S. Dist. LEXIS 50475, at * 8 (W.D. Pa. July 12, 2007).

Because the decision as to whether to provide ladders on bunk beds in prison cells falls within the discretionary function exception in the FTCA, the court lacks subject matter jurisdiction over the plaintiff's claim for negligence based on failure to equip bunk beds in cells with ladders. Therefore, the defendants' motion to dismiss this claim is being granted.

## IV. CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss (Doc. No. 16) is hereby GRANTED. The plaintiff's claim for negligence in the provision of medical care under the FTCA remains because it was not addressed in the motion to dismiss.

It is so ordered.

Dated this 12th day of August, 2011 at Hartford, Connecticut.

/s/AWT<br>
Alvin W. Thompson<br>
United States District Judge